UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

TRUSTEES OF THE LOCAL 813 PENSION
TRUST FUND,

                          **MEMORANDUM & ORDER**
            Plaintiff,           13-CV-0198 (MKB) (JO)

            v.

FRANK MICELI JR. CONTRACTING, INC.,
MAR-NIC EQUIPMENT & LEASING CO., INC.,
QUEEN CITY RECYCLING and 19-17 CLIFF
STREET PROPERTIES LLC,

            Defendants.

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On January 11, 2013, Plaintiff Trustees of the Local 813 Pension Trust Fund (the

"Trustees") commenced the above-captioned action against Defendant Frank Miceli Jr.

Contracting, Inc. ("FMC"), asserting claims for withdrawal liability, interest, liquidated

damages, attorneys' fees and costs, pursuant to the Employee Retirement Income Security Act of

1974, 29 U.S.C. § 4201 *et seq.* ("ERISA"), as amended by the Multiemployer Pension Plan

Amendment Act of 1980, 29 U.S.C. § 1381 *et seq.*  (Compl., Docket Entry No. 1.)  On January

20, 2015, the Trustees filed a Second Amended Complaint (the "SAC"), asserting claims of joint

and several liability for FMC's withdrawal liabilities against Defendants Mar-Nic Equipment &

Leasing Co., Inc. ("Mar-Nic"), Queen City Recycling ("QCR") and 19-17 Cliff Street Properties

LLC ("Cliff Street").[1]  (SAC, Docket Entry No. 36.)

---

[1] On February 22, 2014, Plaintiff filed an Amended Complaint, which also asserted
claims against Frank Miceli, Jr.; Miceli was not named as a Defendant in the SAC.  (Am.
Compl., Docket Entry No. 18.)

On April 16, 2015, the Trustees moved for summary judgment against all Defendants. (Pl. Mot. for Summ. J. ("Pl. Mot."), Docket Entry No. 41.) On October 7, 2015, the Court referred the motion to Magistrate Judge James Orenstein for a report and recommendation. (Order dated Oct. 7, 2015.) By report and recommendation dated March 9, 2016 (the "R&R"), Judge Orenstein recommended that the Court (1) grant Plaintiff's motion for summary judgment, (2) enter an award of $79,574.00 in withdrawal liability jointly and severally against all Defendants, and (3) order the Trustees to submit evidence supporting claims for interest, liquidated damages, attorneys' fees and costs within thirty days. (R&R 10, Docket Entry No. 45.) Defendants filed objections to the R&R. (Defs. Obj. to R&R ("Defs. Obj."), Docket Entry No. 46.) For the reasons set forth below, the Court adopts the R&R in its entirety and grants the Trustees' motion for summary judgment.

I.  **Background[2]**

FMC is a corporation engaged in the demolition business. (Pl. Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 15, Docket Entry No. 41-23; Screenshot annexed to Decl. of Anthony S. Cacace in Supp. of Pl. Mot. ("Cacace Decl.") as Ex. 14, Docket Entry No. 41-9.) Pursuant to agreements with Local 813 of the International Brotherhood of Teamsters, FMC participated in a trust fund (the "Fund") until February 29, 2012, when it completely withdrew from the Fund. (Pl. 56.1 ¶¶ 1–4, 15; Decl. of Sharon Huang in Supp. of Pl. Mot. ("Huang Decl.") ¶¶ 3–4, 7–9, Docket Entry No. 41-2.)

QCR is a for-profit New York corporation that was incorporated in 2004, and is engaged in the recycling business. (Pl. 56.1 ¶ 17; Filing Receipt, annexed to Cacace Decl. as Ex. 18;

---

[2] The Court assumes familiarity with the record, as detailed in the R&R, and describes the undisputed facts only to the extent necessary to address Defendants' objections to the R&R.

QCR Tax Return, annexed to Cacace Decl. as Ex. 12; QCR screenshot, annexed to Cacace Decl. as Ex. 15.) FMC operates from 19 Cliff Street, New Rochelle, NY 10801, a property owned by Cliff Street since at least January 1, 2012. (Pl. 56.1 ¶¶ 15, 19; Answer to Am. Compl. ¶ 3, Docket Entry No. 24; 2005 Collective Bargaining Agreement 33, annexed to Huang Decl. as Ex. 1; 2008 Collective Bargaining Agreement 40, annexed to Huang Decl. at Ex. 2; Certificate of Assumed Name, annexed to Cacace Decl. as Ex. 14; Defs Resp. to First Req. for Admis. ¶ 5, annexed to Cacace Decl. as Ex. 9.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review. *Id.* ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015).

#### ii. Summary judgment

Summary judgment is proper only when, construing the evidence in the light most

favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65 (2d Cir. 2013).  The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b.  Unopposed recommendations

Defendants do not object to Judge Orenstein's recommendation that the Court grant summary judgment as to: (1) the Trustees' claims for withdrawal liability, interest, liquidated damages, attorneys' fees and costs as against FMC and (2) the Trustees' claim for joint and several liability for FMC's withdrawal liability and related relief as against Mar-Nic. (R&R 4–9).  The Court has reviewed the unopposed portions of the R&R and, finding no clear error, the Court adopts these recommendations pursuant to 28 U.S.C. § 636(b)(1).  Accordingly, the Court grants the Trustees' motion for summary judgment as to its claims against FMC and Mar-Nic.  The Court awards the Trustees $79,574 jointly and severally against FMC and Mar-Nic, and finds that the Trustees are also entitled to interest, liquidated damages, attorneys'

fees and costs, in amounts yet to be determined.

### c. Defendants' objections

Defendants object to Judge Orenstein's recommendation that the Court grant the

Trustees' motion for summary judgment against QCR and Cliff Street as jointly and severally

liable to the Trustees for FMC's withdrawal liability.  (Defs. Obj. 1.)  Defendants assert that the

R&R erroneously rejected Defendants' contention that QCR and Cliff Street are protected from

joint and several liability because they are not trades or businesses "similarly situated to [FMC],

the withdrawing entity."  (*Id.* at 2.)  Defendants further argue that QCR and Cliff Street are not

"sufficiently related to the business of FMC" to be businesses under common control for the

purposes of joint and several liability.  (*Id*. at 2–3.)  For the reasons discussed below, the Court

rejects these objections and adopts the R&R in its entirety.  The Court therefore grants the

Trustees' motion for summary judgment as against all Defendants and directs the Trustees to

submit evidence of additional claims for interest, liquidated damages, attorneys' fees and costs

on or before May 2, 2016.

### d. Joint and several withdrawal liability

The Trustees move for summary judgment on their claims that QCR and Cliff Street

share joint and several liability for FMC's withdrawal liability and for related statutory relief.

(Mem. of Law in Supp. of Pl. Mot.  ("Pl. Mem.") 10–13, Docket Entry No. 41.)

When an employer "permanently ceases all covered operations" under an employee

retirement benefit plan, ERISA provides that "an obligation called 'withdrawal liability' may be

imposed on that employer."  *Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding

A.S.*, 629 F.3d 282, 285 (2d Cir. 2010) (quoting 29 U.S.C. §§ 1381(a), 1383(a)).  Pursuant to

section 1301(b)(1), "[a]ll 'trades or businesses' under 'common control' are treated as a single

employer for the purpose of collecting withdrawal liability, and each is jointly and severally liable for the withdrawal liability of another." *UFCW Local One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 371 (2d Cir. 2015) (first citing 29 U.S.C. § 1301(b)(1); and then citing *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 86 (2d Cir. 1997)); *see Kombassan*, 629 F.3d at 285 ("Under the principles of the common control doctrine, 'all businesses under common control are treated as a single employer for purposes of collecting withdrawal liability, and each is liable for the withdrawal liability of another.'" (quoting *Corbett*, 124 F.3d at 86)). The Second Circuit has explained that, to "ensure the viability of multiemployer pension plans against the failure of a contributing employer," the so-called "common control" doctrine includes "broad provisions that disregard the usual legal barriers between affiliated, but legally distinct, businesses." *Enivel Props.*, 791 F.3d at 371.

"In order to impose withdrawal liability on an organization other than the one obligated to the pension fund, two conditions must be satisfied: the second organization must be (1) under common control with the obligated entity; and (2) a 'trade or business.'" *Id.* (citing 29 U.S.C. § 1301(b)(1)). As to the first requirement, "common control" can be established where entities are members of a "brother-sister" group of businesses under common control, which requires that they are "controlled by the same five or fewer persons owning at least 80% of the shares of each corporation, with at least 50% of the shareholder's ownership interests in each corporation identical." *I.L.G.W.U. Nat'l Ret. Fund v. ESI Grp., Inc.*, No. 92-CV-0597, 2002 WL 999303, at *5 (S.D.N.Y. May 15, 2002) (citing 26 C.F.R. § 1.414(c)–2)), *aff'd sub nom. I.L.G.W.U. Nat. Ret. Fund v. Meredith Grey, Inc.*, 94 F. App'x 850 (2d Cir. 2003); *see Cent. States v. Complete Pers. Sols., LLC*, No. 13-CR-1091, 2015 WL 1015440, at *3 (W.D.N.Y. Mar. 9, 2015) (explaining the requirements of satisfying common control for "brother-sister" businesses); *Nat'l*

*Integrated Grp. Pension Plan v. Dunhill Food Equip. Corp.*, 938 F. Supp. 2d 361, 367

(E.D.N.Y. 2013) (same). For these purposes, an individual is deemed to hold the ownership

interests held by his or her spouse. *Cent. States, Se. & Sw. Areas Pension Fund v. Johnson*,

991 F.2d 387, 389 (7th Cir. 1993) ("[A]n individual shall be considered to own an interest

owned, directly or indirectly, by or for his or her spouse." (internal quotation marks omitted)

(quoting 26 C.F.R. § 1.414(c)–4(b)(5)); *see Trustees of Local 138 Pension Fund v. Tax Trucking

Co.*, No. 09-CV-3041, 2012 WL 1886787, at \*3 (E.D.N.Y. Apr. 17, 2012) (explaining the rule,

"known as the 'spousal attribution' regulation"), *report and recommendation adopted*,

No. 09-CV-3041, 2012 WL 1890239 (E.D.N.Y. May 23, 2012).

As to the second requirement, "[f]or an activity to be a 'trade or business' under section

1301(b)(1), a person or entity must engage in the activity: (1) for the primary purpose of income

or profit; and (2) with continuity and regularity." *Enivel Props.*, 791 F.3d at 373 (citing

*Commissioner v. Groetzinger*, 480 U.S. 23, 35 (1987)). In *Enivel Properties*, the Second Circuit

adopted the application of this formula to common control liability, pursuant to section

1301(b)(1), which does not define "trade or business." *Id.* at 373 (stating that other courts have

"have seen fit to employ the Supreme Court's reasoning in a tax case, *Groetzinger*, . . . for

guidance in determining the types of conduct that constitute engaging in a 'trade or business'"

(collecting cases)). The Second Circuit further stated that, as explained in *Groetzinger*, under

this analysis, "[a] sporadic activity, a hobby, or an amusement diversion does not qualify" as a

trade or business. *Id.* (internal quotation marks omitted) (quoting *Groetzinger*, 480 U.S. at 35).

In addition, the Second Circuit affirmed the district court's determination that an

investment company, owned by the same shareholders as a food-processing company subject to

ERISA withdrawal liability, was not a "trade or business" for the purposes of section 1301(b)(1)

because the investment company's "primary purpose was 'personal'" and "profit was only a secondary purpose." *Id*. at 371–73. The investment company in *Enivel Properties* owned three properties for the personal use and investment of the owner family, and had incorporated in order to protect the family from liability for injury on the properties; the district court explained that the family rented out one of the properties to "simply offset its carrying costs." *Id*. at 374.

As to the "continuity and regularity" requirement, the Second Circuit affirmed the district court's determination that the plaintiff had failed to prove that the investment company's activity was not "continuous or regular" because the individual owners spent only "negligible" time "managing, leasing, and trying to sell the properties." *Id*. at 374–75 (explaining that the district court held that it "was "unable to draw the reasonable inferences necessary to render a finding that any income or profit activities . . . were continuous and regular" (citation omitted)). The court explained that "mere ownership of a property (as opposed to activities taken with regard to the property) cannot be considered in determining whether conduct is regular or continuous." *Id*. at 375 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001)). The Second Circuit explained that, although formally incorporated, the investment company "was not organized as a profit-making enterprise" and "[i]ts activities were exceedingly limited and it operated at a loss." *Id*. at 374.

Judge Orenstein recommended that the Court grant summary judgment to the Trustees and find QCR and Cliff Street jointly and severally liable for FMC's withdrawal. (R&R 6–9.) Judge Orenstein determined that "the undisputed facts establish" that, at the time FMC received the notice from the Fund that established FMC's withdrawal liability, QCR, Cliff Street, Mar-Nic, and FMC were "under common control." (*Id*. at 6–7 (explaining that "the purpose of withdrawal liability 'is to fix liability upon those who were responsible at the time of

8

withdrawal" (first quoting *Jaspan v. Certified Indus., Inc.*, 658 F. Supp. 332, 334 (E.D.N.Y. 1986); and then citing *Corbett*, 124 F.3d at 86)).) Judge Orenstein further explained that Defendants do not contest that Miceli wholly owns FMC, Mar-Nic and QCR and that Cliff Street is half-owned each by Miceli and his wife, sufficient to establish that the entities are "commonly controlled" as "brother-sister" businesses.[3] (*Id*.) Defendants argue that summary judgment should not be granted as to QCR and Cliff Street because Judge Orenstein erred in failing to make findings (1) that these entities have the same business purpose as FMC, and (2) that QCR and Cliff Street are sufficiently related to FMC. (*See* Defs. Obj. 2–3.) The Court addresses the liability of QCR and Cliff Street in turn.

### i. QCR is jointly and severally liable for FMC's withdrawal liability

In opposing the Trustees' motion for summary judgment, Defendants argued, without citing any legal authority, that "a business must have similar operations to be included in a 'control group.'" (Defs. Opp'n 2.) Defendants argued that, because QCR "is a recycling business, as opposed to [a] building demolition" business like FMC, QCR could not share in FMC's withdrawal liability as a matter of law. (*Id*.) Defendants now argue that Judge Orenstein erred in declining to find that the Trustees failed to produce evidence that QCR is a business "similarly situated to the withdrawing entity, [FMC]" and failed to "demonstrate there was no triable issue regarding the purpose of [QCR], whether the activities [QCR] engaged in were carried on regularly, and the extent of involvement of any personnel from FMC." (Defs. Obj. 2.)

As stated above, Defendants do not contest that FMC and QCR are each wholly owned by Miceli and, thus, are under "common control." *See* 26 C.F.R. § 1.414(c)–2. It is also

---

[3] Defendants do not contest this finding. As it is unopposed, the Court has reviewed this determination for clear error and, finding none, adopts it.

uncontested that QCR is a for-profit New York corporation that was incorporated in 2004, and is engaged in the recycling business. (Pl. 56.1 ¶ 17.) Thus, because FMC and QCR are under "common control" and, in addition, QCR has been engaged in the business of recycling for profits since 2004, QCR is a trade or business pursuant to section 1301(b)(1), and is jointly and severally liable to Plaintiffs for withdrawal liability. *See Enivel Props.*, 791 F.3d at 373.

Because they have not, and cannot, dispute either of the elements required to impose joint and several withdrawal liability, Defendants argue that the Court must impose an additional requirement before finding QCR jointly and severally liable for FMC's withdrawal liability. Defendants argue that joint and several liability for a commonly controlled business requires the additional showing that the entities under common control have "similar operations," (Defs. Opp'n 2), a "common business operation," (*id*.), or a shared "purpose," (Defs. Obj. 2). In objecting to the R&R and arguing that the law requires this additional proof, Defendants cite to *UFCW Local One Pension Fund v. 15 McFadden Rd., Inc.*, No. 11-CV-1144, 2013 WL 4424992 (N.D.N.Y. Aug. 14, 2013). (Defs. Obj. 2.) However, *McFadden Rd*. provides no support for Defendants' argument. In *McFadden Rd*., the court explained that "no economic nexus is required between the obligated organization and trades or businesses under common control because the statute does not impose one." *McFadden Rd., Inc.*, 2013 WL 4424992 at *4 (internal quotation marks omitted) (quoting *Fulkerson*, 238 F.3d at 895, n.1); *see also Tax Trucking Co.*, 2012 WL 1886787, at *3 n.6 (same); *ILGWU Nat'l Ret. Fund v. Minotola Indus., Inc.*, No. 88-CV-9131, 1991 WL 79466, at *5 (S.D.N.Y. May 3, 1991) ("[A]n operation which clearly constitutes a 'trade or business' (*e.g.*, an operating corporation with a management structure manufacturing and selling a product) would not have to have any economic relationship with the withdrawing entity."); *Cent. States, Se. & Sw. Areas Pension Fund v. Neiman*, 285 F.3d

587, 596 (7th Cir. 2002) ("The fact that Neiman's personal activities were wholly unrelated to South Coast's trucking operations is without moment because . . . an economic nexus between businesses under common control need not exist to impose withdrawal liability.").

Because there is no requirement that FMC and QCR have similar or common business operations, be otherwise similarly situated, or share any "economic nexus," and also because it is undisputed that QCR has been operating a recycling business for profit since 2004 and is under common control with FMC, Judge Orenstein correctly concluded that QCR is jointly and severally liable for FMC's withdrawal liability. The Court therefore grants the Trustees' motion for summary judgment as to QCR.

### ii. Cliff Street is jointly and severally liable for FMC's withdrawal liability

The Trustees argued in moving for summary judgment that the undisputed facts establish that FMC operated out of the property owned by Cliff Street, and that these facts are sufficient to establish that Cliff Street constitutes a business for the purposes of section 1301(b)(1), and is therefore subject to joint and several liability. (Pl. Mem. 12–13.) In opposing the Trustees' motion, Defendants argued that the Trustees failed to establish an adequate relationship between Cliff Street and FMC and "failed to demonstrate [that] there is any rental or lease arrangement between [Cliff Street] and FMC." (Defs. Opp'n 2.) Defendants argued that the inclusion of a "property ownership company" in a "control group require[s] such company to lease or rent to a company under common control" and argued that Cliff Street is not "engaged in the business of owning and leasing property," but rather that it only "owned [the] property from which FMC operated." (*Id.*)

In the R&R, Judge Orenstein concluded that the uncontested fact that FMC operates from a property owned by Cliff Street is sufficient to establish that Cliff Street is a business, pursuant

11

to section 1301(b)(1), subject to common control withdrawal liability. (R&R 8.) Judge

Orenstein explained that the Trustees "need not prove the existence of a rental or lease

agreement" because the property at issue is "used by the withdrawing employer." (*Id*. (internal

quotation marks omitted) (quoting *Cent. States Se. & Sw. Areas Pension Fund v. Messina Prods.,*

*LLC*, 706 F.3d 874, 882 (7th Cir. 2013)).)

       In opposing the R&R, Defendants argue that the Court should deny summary judgment to

the Trustees because they failed to "demonstrate there was no triable issue regarding the purpose

of [Cliff Street], whether the activities [Cliff Street] engaged in were carried on regularly, and

the extent of involvement of any personnel from FMC." (Defs. Obj. 2.) The Court understands

Defendants to argue that the Trustees have failed to produce facts sufficient to establish that Cliff

Street is a "trade or business" for the purposes of section 1301(b)(1) because the Trustees have

not produced a lease between FMC and Cliff Street or otherwise demonstrated "the degree of the

nexus" between these entities. (*Id*.)

       Applying the *Groetzinger* test, in order to be entitled to summary judgment as to the

claims against Cliff Street, the Trustees must show that the uncontested facts demonstrate that

Cliff Street operates "(1) for the primary purpose of income or profit; and (2) with continuity and

regularity." *Enivel Props.*, 791 F.3d at 373 (citing *Groetzinger*, 480 U.S. at 35). As the Second

Circuit stated, "mere ownership of a property (as opposed to activities taken with regard to the

property) cannot be considered in determining whether conduct is regular or continuous." *Id*. at

375 (quoting *Fulkerson*, 238 F.3d at 895); *see also Nat'l Pension Plan of the UNITE HERE*

*Workers Pension Fund v. Swan Finishing Co.*, No. 05-CV-6819, 2006 WL 1292780, at \*3

(S.D.N.Y. May 11, 2006) ("Courts have held that 'the mere possession of property over a period

of time [does] not establish regular and continuous activity' where it is 'more akin to a passive

investment.'" (quoting *Neiman*, 285 F.3d at 595)). Thus, without a showing that such property ownership is for a profit-driven purpose and that the property ownership includes business activity, property ownership alone is not sufficient to satisfy either prong of the *Groetzinger* standard. *See Enivel Props.*, 791 F.3d. at 371–73.

However, courts have "uniformly" held that, when a company under common control leases its property "*to a withdrawing employer*," that act is sufficient to render the property owner "a 'trade or business' for purposes of section 1301(b)(1)." *Swan Finishing Co.*, 2006 WL 1292780 at *3 (collecting cases); *see Cent. States Se. & Sw. Areas Pension Fund v. Nagy*, 714 F.3d 545, 551 (7th Cir. 2013) (explaining that "leasing property to a withdrawing employer itself is *categorically* a 'trade or business'" (citation omitted)); *Trs. of Amalgamated Ins. Fund v. Saltz*, 760 F. Supp. 55, 57 (S.D.N.Y. 1991) ("[T]he rental of property to a corporation under common control with the property owner/lessor is sufficient to make the rental a trade or business."); *see also Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Del. Valley Sign Corp.*, 945 F. Supp. 2d 649, 653 (E.D. Va. 2013) (stating that courts that have addressed this issue are "in accord that renting property to a withdrawing employer is categorically a trade or business" (internal quotation marks omitted) (collecting cases)). As one court explained, "[l]easing property to a withdrawing employer is an economic relationship that could be used to . . . dissipate or fractionalize assets and thus avoid withdrawal liability." *Swan Finishing Co.*, 2006 WL 1292780 at *3.

The Second Circuit has not addressed whether the use of property by an entity under common control is sufficient to establish that the property owner is a trade or business for purposes of section 1301(b)(1). The Seventh Circuit has addressed this issue and stated that "where the real estate is . . . used by the withdrawing employer and there is common ownership,

it is improbable that the rental activity could be deemed a truly passive investment." *Messina*

*Prods.*, 706 F.3d at 882 (explaining that "the likelihood that a true purpose and effect of the

'lease' is to split up the withdrawing employer's assets is self-evident"); *see also Dunhill Food*

*Equip. Corp.*, 938 F. Supp. 2d at 373 ("The policy of § 1301(b)(1) is to prevent a company from

avoiding liability by shifting its assets into other businesses under its control." (citation and

internal quotation marks omitted)).

Here, it is uncontested that Cliff Street owned the property from which FMC operated at

the time of FMC's withdrawal from the Fund. (Pl. 56.1 ¶ 19; Defs Resp. to First Req. for Admis.

¶ 5.) It is also undisputed that Cliff Street and FMC are under common control. (Pl. 56.1 ¶ 18;

Defs. Supp. Resp. to Interrog. 1, annexed to Cacace Decl as Ex. 8; Defs. Resp. to First Req. for

Admis. ¶ 18.) While the Trustees have not produced evidence of a lease between Cliff Street and

FMC, as in *Messina*, where the Seventh Circuit explained that the absence of a "formal lease"

led to the "inescapable conclusion . . . that the [owners'] leasing activity was simply an extension

of . . . the withdrawing employer, and was a means to fractionalize [the withdrawing employer's]

assets," *Messina Prods.*, 706 F.3d at 883, the same can be said here where Cliff Street has

permitted FMC to operate from Cliff Street's property without a formal lease agreement. With

or without proof of a formal lease agreement between Cliff Street and FMC, the uncontested

facts show that FMC operated from the property owned by Cliff Street. As has been found by

the courts that have considered this issue, this action makes Cliff Street a trade or business for

purposes of section 1301(b)(1). Therefore, the Court adopts the R&R as to this conclusion and

grants the Trustees' motion for summary judgment as to Cliff Street.

**III.   Conclusion**

For the reasons stated above, the Court adopts Judge Orenstein's R&R in its entirety.

The Court grants the Trustees' motion for summary judgment and awards the Trustees $79,574

in withdrawal liability, jointly and severally against all Defendants and finds that the Trustees are

also statutorily entitled to interest, liquidated damages, attorneys' fees and costs.  The Trustees

are directed to submit evidence of additional claims for interest, liquidated damages, attorneys'

fees and costs on or before May 2, 2016.

SO ORDERED:

                                        ___s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge

Dated:  March 31, 2016
        Brooklyn, New York